UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Petitioner,<br><br>v.<br><br>$612,612.25, MORE OR LESS,<br>SEIZED FROM GREATER TEXAS<br>FEDERAL CREDIT UNION<br>ACCOUNT XXXXXXX2054,<br>　　　　Respondent. | § § § § § § § § § § § | CIVIL ACTION NO. A-26-CV-459 |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Fed. R. Civ. P., and respectfully states as follows:

## I.
## NATURE OF THIS ACTION

This action is brought by the United States of America seeking forfeiture to the United States of the following property:

$612,612.25, more or less, seized from Greater Texas Federal Credit Union account XX2054

hereinafter the Respondent Currency.

## II.
## JURISDICTION AND VENUE

Under Title 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under Title 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Property under Title 28 U.S.C. §§1355(b) and

1395.   Venue is proper in this district pursuant to Title 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to Title 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Respondent Property is found in this district.

### III.
### STATURY BASIS FOR FORFEITURE

This is a civil forfeiture action *in rem* brought against the Respondent Currency for Title 18 U.S.C. § 1344 and Title 26 U.S.C. § 7201 *et seq.* violations and subject to forfeiture to the United States of America pursuant to Title 18 U.S.C. § 981(a)(1)(C) and Title 26 U.S.C. §§ 7301(a)-(e) and 7302, which states (with emphasis added):

> **18 U.S.C. § 981.   Civil forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> \*\*\*
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . 1344.
>
> ↓
>
> **26 U.S.C. §§ 7301(a)-(e).   Civil forfeiture**
>
> **Title 26 U.S.C. §§ 7301.   Property subject to tax**
>   **(a)   Taxable Articles**
>   Any property on which, or for or in respect whereof, any tax is imposed by this title which shall be found in the possession or custody or within the control of any person, for the purpose of being sold or removed by him in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which is removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof, may be seized, and shall be forfeited to the United States.
>
>   **(b)   Raw Materials**
>   All property found in the possession of any person intending to manufacture the same into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax, may also be seized, and shall be forfeited to the United States.
>
>   **(c)   Equipment**
>   All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a) may also

be seized, and shall be forfeited to the United States.

**(d) Packages**
All property used as a container for, or which shall have contained, property described in subsection (a) or (b) may also be seized and shall be forfeited to the United States.

**(e) Conveyances**
Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a), may also be seized, and shall be forfeited to the United States.

**26 U.S.C. § 7302**

**Title 26 U.S.C. § 7302.   Property used in violation of internal revenue laws**
It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue law, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property.  A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property.  Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law.   The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

↓

**18 U.S.C. § 1344.   Bank Fraud**
 Whoever knowingly executes, or attempts to execute, a scheme or artifice –
***
**(1)** to defraud a financial institution; or
**(2)** to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
↓

**26 U.S.C. § 7206 False Returns**
Any person who
**(1)** Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under

      the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or

**(3)** Simulates or falsely or fraudulently executes or signs any . . . document required by provisions of the internal revenue laws; or by any regulation made in pursuance thereof or procures the same to be falsely or fraudulently executed . . . .

## IV.
## FACTS IN SUPPORT OF VIOLATION

1. On or about August 6, 2024, Mia Canady and Khalil Jeffries went to the First Convenience Bank branch located inside the Wal-Mart at 918 Bandera Road in San Antonio, Texas.

2. Canady, an existing customer, brought in Jeffries, whom she identified as her "business partner," to be added as a joint signer on her account.

3. Jeffries was then successfully added to Canady's account.

4. When Jeffries was added to her account, he provided them with a residence address of 13031 Feather Ridge Drive, San Antonio, Texas.

5. The following day, Canady returned to the same branch location and requested to deposit a United States Treasury check, made payable to Jeffries as a tax refund in the amount of $612,612.25, into the account.

6. The branch recorded the check information and gave the check back to Canady.

7. The branch sent an email to TIGTA (Treasury Inspector General for Tax Administration) via the agency's "External Leads Program" regarding the check, which is a process for financial institutions to verify the validity of questionable tax refund checks before accepting them for deposit.

8. On the same day, TIGTA responded to the inquiry and requested that First Convenience Bank send the check to the IRS due to "possible tax fraud."

9. However, since the branch had already given the check back to Canady, they were unable to send the check in to the IRS.

10. Several weeks later, Canady and Jeffries went to the Greater Texas Federal Credit Union (GTFCU) branch located at 6411 North Lamar Blvd in Austin, Texas and Jeffries requested to deposit this same Treasury check into an existing GTFCU account belonging to an individual named Aldo Washington.

11. Washington does not have a defined relationship with Jeffries or Canady.

12. Jeffries was told he could not deposit the check into another person's account, and he would have to open his own account and deposit the check into it.

13. Jeffries then opened an account and provided a different residence address from what he provided to First Convenience Bank—2939 Eckert Street, Austin, Texas.

14. Jeffries had a current Georgia Identification Card indicating his residence address of record was in Lithonia, GA.  Jeffries still possesses this same Identification Card bearing the same residence address and has not obtained a Texas Driver's License or Identification Card as one would customarily do upon moving to Texas.

15. While opening the account, Jeffries requested that Canady be added as a joint signer on the account and told the credit union that Canady was his "Godmother" in contrast to the "business partner" relationship the pair told First Convenience Bank.

16. The account was opened, and Jeffries deposited the $612,612.25 tax refund check to the account, which was placed on a hold to verify the check before the funds were made available.

17. Over the next several weeks, Jeffries and Canady repeatedly contacted GTFCU requesting the release of the funds. On September 9, 2024, Jeffries and Canady went in person to

a GTFCU branch in San Antonio and demanded that the credit union release the hold on the funds, which the credit union declined to do.

18. GTFCU began conducting research on the check and requested a tax transcript from Jeffries, which he supplied.

19. GTFCU noted that Jeffries's large tax refund check appeared to result from him claiming $834,683 in refundable credits.

20. Additionally, GTFCU located a Facebook page appearing to belong to Jeffries where he appears to be openly involved in criminal activity and is advertising forged pay stubs, bank statements, and other documents for sale.

21. Based upon these red flags, GTFCU contacted the United States Secret Service office in Austin to report suspected fraud related to the tax refund check.

22. USSS TFO Conley began an investigation and, among other things, found that Canady had been arrested in Tarrant, Alabama just a year earlier in 2023 at a check cashing business for attempting to cash tax refund checks related to an identity theft victim identified as Rayvon Poag, a Georgian resident. Poag's stolen personal identity information was used to file a fraudulent tax return without his knowledge or consent.

23. As described later in this affidavit, the tax return that was filed using Poag's stolen personal identifying information was submitted to the IRS by Canady.

24. During that arrest, Canady claimed to own a tax preparation business, but the Tarrant, Alabama Police Department's investigation led them to the conclusion that no such business existed.

25. TFO Conley prepared a state search and seizure warrant and seized the $612,612.25 that Jeffries deposited into his newly opened GTFCU account.

26. During the course of the investigation, TFO Conley contacted Jeffries via telephone and attempted to interview Jeffries about the tax return that resulted in this large refund, but Jeffries was uncooperative and would not answer questions.

27. An Ex Parte Court Order was obtained authorizing the IRS to release tax records related to this investigation and were subsequently released to TFO Conley. These tax records included tax returns for tax year 2022 and 2023 for Canady, Jeffries, and tax year 2022's return for Rayvon Poag (the identity theft victim related to Canady's 2023 arrest).

28. There were several indicators of tax fraud related to Jeffries's tax year 2023 return that resulted in the $612,612.25 tax refund.

29. For instance, Jeffries claimed income as self-employed in jewelry sales on his 2023 tax return.

30. The IRS Criminal Investigations SA reviewed Jeffries's 2023 return and found that the expenses, losses, and profits related to Jeffries's supposed jewelry business were not in line with expected or average numbers related to a single-employee jewelry business.

31. Additionally, no online presence was located for Jeffries' supposed jewelry business, and no wages were reported to the Georgia Department of Labor related to this business (Georgia's version of the Texas Workforce Commission).

32. The only wages reported for Jeffries in his home state of Georgia were from an Amazon delivery service and a nursing home/assisted living center.

33. The $612,612.25 tax refund was the result of refundable credits claimed on Jeffries's 2023 tax return claiming that he had "overpaid" the previous year's (2022) taxes by $834,683 and directed the IRS to refund that amount, minus the current tax year 2023 tax liability, which equaled to the $612,612.25 amount.

34. However, a review of Jeffries's 2022 tax return very clearly shows that he only reported a total of $21,819 in income as a "farmer," including the false claim of receiving income from the Alaska Permanent Fund Dividend (which he was not legally entitled to as he was not a resident of the State of Alaska). Furthermore, the claimed dividend was highly inflated from the actual amount were he entitled to it, as the yearly dividend is public information and available online.

35. Jeffries's 2022 tax return also claimed tax credits for using over 284,500 gallons of fuel for agricultural use, and he received a tax refund of $51,215 from the IRS for the fuel credits. Again, the IRS- CI Special Agent found no evidence in the return indicating that Jeffries had actually conducted any business as a farmer and this amount of fuel claimed was more in line with a large, corporate farming operation and not a self-employed farmer with no employees.

36. Jeffries's 2022 tax return indicates no additional taxes were paid by Jeffries and no additional expenses related to agriculture were claimed, thus completely nullifying, on its face, his claim of having "overpaid" $834,683 in taxes in 2022.

37. Additionally, there were numerous indicators of fraud related to Jeffries' previous tax year 2022 tax return and numerous indicators that his 2022 return and victim Rayvon Poag's 2022 return were both prepared by Canady.

38. During the course of the investigation, TFO Conley and an IRS-Criminal Investigations Special Agent compared Jeffries' 2022 tax return to the 2022 tax return belonging to Rayvon Poag. Numerous similarities and data points were observed, leading to the conclusion that both were prepared by Canady.

39. For instance, Jeffries' 2022 return preparer shows to be Mia Canady at "Creative Tax Solutions" with an address of 1515 Stouts Road, Fultondale, GA. It was found that this

address is not a business address, but the physical address of the US Post Office building in Fultondale, GA. There was no online presence for a "Creative Tax Solutions" in Fultondale, GA.

40. Poag's 2022 return shows to have been prepared by "Memory Houston" at the same Creative Tax Solutions business. The phone number for the tax preparer on both returns, 254-423-0371, is the same on both returns and is the same number provided by Canady as her cell phone during her arrest in Tarrant, Alabama.

41. Both Jeffries's and Poag's 2022 returns claim income from the Alaska Permanent Fund Dividend (Jeffries claimed $19,820 and Poag's 2022 return claimed $20,600), neither of which were legally able to claim the income as they are not residents of Alaska and both numbers are greatly inflated from the actual dividend amount of $2,621 for tax year 2022.

42. Both Jeffries's and Poag's 2022 returns claim tax credits for agricultural fuel use. Jeffries's occupation is listed as "farmer" and Poag's occupation is listed as "driver". The amount of fuel claimed to have been used on both returns are unrealistic amounts of fuel used and similar in numbers: Jeffries's return claims a $52,064 tax credit for agricultural fuel totaling 284,500 gallons and Poag's return claims a $52,247 tax credit for agricultural fuel totaling 285,500 gallons. Legitimate farmers regularly file tax returns that include expenses related to, and depreciation of, farming equipment, none of which was done on Jeffries's return.

43. TFO Conley interviewed Poag who stated that he does not know Canady and did not authorize her to prepare a tax return on his behalf or possess his personal identifying information for any reason.

44. While Canady is not a professional tax preparer, she has used multiple PTINs (Preparer Tax Identification Number which is assigned to tax preparers by the IRS) and appears to

have prepared at least eleven tax returns for different individuals in 2025, including one she prepared on her own behalf claiming a tax refund of $46,707, which was rejected by the IRS.

45. Of the eleven returns prepared by Canady in 2025, six were accepted by the IRS and five were rejected. All eleven of the returns believed to be prepared by Canady had tax refunds directed to various Green Dot Bank accounts. Three of the accepted returns have a taxpayer address in Texas and three have taxpayer addresses in Georgia. Of the six returns accepted by the IRS, five were transmitted from an Internet Protocol (IP) Address in San Antonio, Texas and one IP address in Georgia. The IP addresses for the rejected returns resolve to either San Antonio or Houston.

46. Accordingly, the $612,612.25 Respondent Currency seized in this case were proceeds directly traceable to violations of federal criminal statutes, including 18 U.S.C. § 1344 and 26 U.S.C. § 7206.

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Currency; that due notice pursuant to Rule G(4) be given to all interested parties to appear and show cause why forfeiture should not be decreed;[1] that an order be entered to command the United States Secret Service to post the Notice of Complaint for Forfeiture on the Respondent Currency in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, FED. R. CIV. P., and Title 18 U.S.C. § 985(c)(1)(B); that the Respondent Currency be forfeited to the United States; and that the

---

[1] Appendix B, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Property.

Respondent Property be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

                                                Respectfully submitted,

                                                JUSTIN R. SIMMONS
                                                United States Attorney

By:    /S/_____
          MARK TINDALL
          Assistant United States Attorney
          Texas Bar #24071364
          903 San Jacinto Blvd., Suite 334
          Austin, Texas   78701
          Tel: (512) 916-5858
          Fax: (512) 916-5854
          Email: mark.tindall@usdoj.gov
          Attorney for the United States of America

## **VERIFICATION**

Task Force Officer Matt Conley declares and says that:

1.      I am a Task Force Officer with the United States Secret Service assigned to the Central Texas Financial Crimes Task Force, and am the investigator responsible for the accuracy of the information provided in this litigation.

2.      I have read the above Verified Complaint for Forfeiture and know the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of February, 2026.

Matt Conley, Task Force Officer
United States Secret Service
Central Texas Financial Crimes Task Force